FILED

2010 Nov-16  AM 11:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| ISSAC DAVID, AN INDIVIDUAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:09-cv-01697-JEO |
| | ) | |
| SAURIN SHAH, M.D., and | ) | |
| VALERIE SHAH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the court is the motion of the defendants, Saurin Shah, M.D., and Valerie Shah (hereinafter "the Shahs" or "the defendants"), for summary judgment on the claim of Issac David (hereinafter "David" or "the plaintiff") for malicious prosecution. (Doc. 11).[1] The parties have been afforded an opportunity to brief the relevant issues. Upon consideration, the court finds that the motion is due to be granted.

**I.      SUMMARY JUDGMENT STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes

---

[1]References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court and located at the top of each pleading filed in this matter.

demonstrate the absence of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial.  *See id.* at 324.

The substantive law will identify which facts are material and which are irrelevant.  *See, e.g., Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  *See, e.g., Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson*, 477 U.S. at 248;  *Chapman*, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; *i.e.* facts that would entitle it to a directed verdict if not controverted at trial.  *See Fitzpatrick*, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

2

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case.  *See Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *See Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## II.    FACTUAL BACKGROUND[2]

On October 5, 2006, the defendants executed a contract for the purchase of a home that was to be constructed in Chelsea, Alabama.  (Ex. A[3] & Ex. 2[4]).  The plaintiff was the owner of a construction company called "The David Group, Inc."  The original contract includes a number of addendums that were executed the same day.  The first (Addendum A) was a "Construction Information Addendum," involving the subdivision where the home was to be built and the defendants herein as the purchasers.  Neither the plaintiff nor "the David Group, Inc." signed that document.  (Ex. 2).[5]  It appears, however,that the plaintiff herein initialed two of the three pages of the addendum.  (*Id*.)  The second addendum, the "Limited New Home Warranty" (Addendum B) was executed by the Shahs and the plaintiff as "Builder."  It lists "The David Group, Inc." as the seller.  (Ex. B & Ex. 2).[6]  The plaintiff also executed a third addendum, the "Plan Review/Change Order" (Addendum E), the same day as "Homebuilder."  (Ex. C & Ex. 2).[7]  Five other documents were a part of the contract (Addendum C, D, F, G, H & I), but did not require

---

[2] Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts.  *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party).  This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.  This factual background is consistent with the undisputed, material facts of record.  The "facts" have been construed in a light most favorable to the Plaintiff where there is evidentiary support for Plaintiff's position regarding the "facts."

The court notes that, although the parties contest most of the factual conclusions made by one another, the <u>material</u> facts of this lawsuit are not in dispute based on the evidence of record.

[3] The lettered exhibits are located at document 13 in the electronic file.  Exhibit A is document 13-1 at 2 of 76.

[4] The numbered exhibits are located at document 14-1 in the electronic file.  Exhibit 2 is more specifically found at page 4 of 46.

[5] Doc. 14-1 at 12-14 of 46.

[6] Doc. 13-1 at 10 of 76; Doc. 14-1 at 15 of 46.

[7] Doc. 13-1 at 14 of 76, Doc. 14-1 at 24 of 46.

the plaintiff's signature.  (Ex. 2)[8]  Three of them (Addendum F, G & I) did refer to "The David

Group, Inc."

On February 18, 2007, the plaintiff executed two related documents, "Pool Cost

Breakdown" and a "Schedule of Allowances" (Addendum J & L)[9] by signing "Issac David."

(Ex. D & E; Ex. 2).[10]  Both documents appear to be on "The David Group, Inc." letterhead. (*Id*.)

Again on June 1, 2007, the plaintiff executed three contract related documents, a "Final

Price/Pool" sheet, a "Closing/Pool/Punch list and a "Final Punch List" (Addendum P, Q & R), by

signing "Issac David."  (Ex. F & G; Ex. 2).[11]  These documents were on "RE/MAX Advantage

South" forms.  (*Id*.)  The parties also executed a "Limited Warranty Agreement" that contained

the following acknowledgment:

> SELLER:
> The David Group, Inc.
>
> s/_____
> by Issac David
> its President

(Ex. 3).[12]  The "Settlement Statement" for the closing listed "The David Group, Inc." as the seller

and contained the plaintiff's signature, as "President."  (Ex. 4).[13]

---

[8] Doc. 14-1 at 18-23 of 46 & 25-29 of 46.  Addendum H ("Orientation for New Homes") is signed by David for Little Narrows, LLC.

[9] The record includes an "Addendum K" but it is undated and unsigned.  (Doc. 14-1 at 31 of 46).

[10] Doc. 13-1 at 16 & 18 of 76; Doc. 14-1 at 30 & 33 of 46.

[11] Doc. 13-1 at 20 & 22 of 76; Doc. 14-1 at 43-45 of 46.

[12] Doc. 14-2 at 8 of 38.

[13] Doc. 14-2 at 10-11 of 38.  The court also notes that other documents associated with the closing that were signed by the parties hereto (e.g., a "Statutory Joint Survivorship Deed" and  "Disclosure" form (Ex. 9 & 12 (doc. 14-2 at 24 & 31 of 38)), list David as the President of "The David Group, Inc."

The record also shows that there were various "Change Order[s]" that were executed from November 29, 2006, through May 16, 2007 (Addendum M, N & O).  (Ex. 2).[14]  All were directed to the Shahs and were on "The David Group, Inc." stationary.  (*Id*.)

Prior to the closing on the residence, some settling occurred at the home site.  (David Dep. (Ex. H) at 126-27).[15]  There was some cracking on the residence that was also noted.  (*Id*. at 126-28).  The exterior stucco wall, where there was cracking, was re-patched.  (*Id*.)

On November 28, 2007, counsel for the defendants sent a letter to Issac David at the "The David Group, Inc." concerning the problems with the construction of the house.  (Ex. 5).[16]  In the heading, the letter said it concerned "Saurin and Valerie Shah vs. the David Group, Inc., and Little Narrows, LLC."  (*Id*.)  When counsel did not hear back from the plaintiff, he sent a second letter on December 18, 2007.  (Ex. 6).[17]  On January 29, 2008, counsel sent a letter demand for arbitration.  (Ex. 7).[18]

On February 22, 2008, the Shahs filed suit in the Circuit Court of Jefferson County against David, seeking, *inter alia*, recision of the contract and damages for negligence and suppression of the information related to the settling and cracking.  (Ex. I).[19]  The case was arbitrated upon joint motion of the parties.  (Ex. J).[20]  On July 31, 2009, the arbitrator found the

---

[14] Doc. 14-1 at 34-42 of 46.

[15] Doc. 13-1 at 24 of 76.  The page references in the text are to the actual deposition pages.

[16] Doc. 14-2 at 13 of 38.

[17] Doc. 14-2 at 17 of 38.

[18] Doc. 14-2 at 19 of 38.

[19] Doc. 13-1 at 61 of 76.

[20] Doc. 13-1 at 72 of 76.

David Group, Inc., liable to the Shahs "for $10,225.00 which is the total estimate for repairs and $2,500 for the money owed on the 'pool.'" (Ex. K at 2; Ex. 1).[21]  He also specifically found "that Isaac [sic] David is not personally liable and ... dismisse[d] him as a Respondent."  (*Id.*)

This matter was initiated on August 24, 2009.  The plaintiff asserts one claim for malicious prosecution against the Shahs.  (Doc. 1).

**III.    DISCUSSION**

The defendants argue that "[b]ecause Issac David executed the contract and other related documents in his individual capacity, and because he possessed information which was not disclosed to the Shahs prior to closing (i.e., the basis of the Shah's suppression claim) the Shahs possessed probable cause to believe that Issac David was liable to them; thus, their lawsuit against him individually, as a matter of law, was not 'malicious.'"  (Doc. 12 at 4).  The plaintiff asserts that there are material facts that preclude summary judgment.  (Doc. 14 at 6).  In support of this contention, he cites to ALABAMA CODE  § 7-3-402(b).

At the outset, it is noted that "malicious prosecution actions are not favored" in Alabama. *Skinner v. Etheridge*, 564 So. 2d 902, 903 (Ala. 1990).  "The reason for such disfavor is clear: '[P]ublic policy requires that all persons shall resort freely to the courts for redress of wrongs and to enforce their rights, and that this may be done without the peril of a suit for damages in the event of an unfavorable judgment by jury or judge.'"  *Boothby Realty Co. v. Haygood*, 269 Ala. 549, 554, 114 So. 2d 555, 559, (1959).  The applicable standard in considering a motion for summary judgment on a malicious prosecution claim is well-settled in Alabama:

"'For the trial court to have erred in granting summary judgment for [the

---

[21] Doc. 13-1 at 76 of 76; Doc. 14-1 at 1-3 of 46.

defendant] on the malicious prosecution count, there must have been some direct
or circumstantial evidence from which the trier of fact could reasonably infer each
of the following elements, which [compose] a cause of action for malicious
prosecution: (1) that a judicial proceeding was initiated by [the defendant] against
[the plaintiff], (2) that the judicial proceeding was instituted without probable
cause, (3) that the [proceeding was] instituted by [the defendant] maliciously,
(4) that the judicial proceeding had been terminated in favor of [the plaintiff], and
(5) that [the plaintiff] suffered damage as a proximate cause of the judicial
proceeding.'"

*Skinner*, 564 So. 2d at 903 (quoting *Smith v. Wendy's of the South, Inc.*, 503 So. 2d 843, 844

(Ala.1987)).

The Alabama Court of Civil Appeals recently stated the following concerning the lack of

probable cause element of a malicious prosecution claim:

"Probable cause is defined as ' "[a] reasonable ground for suspicion,
supported by circumstances sufficiently strong in themselves to warrant a cautious
man in the belief that the person accused is guilty of the offense charged." ' "
*Eidson v. Olin Corp.*, 527 So. 2d 1283, 1285 (Ala.1988) (quoting *Parisian Co. v.
Williams*, 203 Ala. 378, 383, 83 So. 122, 127 (1919)).  " 'The question is not
whether the [malicious prosecution] plaintiff was guilty of the thing charged, but
whether the [malicious prosecution] defendant acted in good faith on the
appearance of things.' "  *Eidson*, 527 So. 2d at 1285 (quoting *Birwood Paper Co.
v. Damsky*, 285 Ala. 127, 134-35, 229 So. 2d 514, 521 (1969)).  Our supreme
court has stated:

"The test that this Court must apply when reviewing the
lack-of-probable-cause element in a malicious prosecution case in
which summary judgment has been granted to a defendant is as
follows:  Can one or more undisputed facts be found in the record
below establishing that the defendant acted in good faith on the
appearance of things as they existed when suit was filed, based
upon direct evidence, or upon circumstantial evidence and
inferences that can reasonably be drawn therefrom?  If so, then
summary judgment in favor of the defendant on plaintiff's
malicious prosecution count would be appropriate."

*Eidson*, 527 So. 2d at 1285-86.  In other words, "[i]f there are any undisputed
facts of record establishing that [the defendant] had probable cause to bring the
former action ... against [the plaintiff], then [the plaintiff] cannot recover for

malicious prosecution and summary judgment is appropriate." *Eidson*, 527 So. 2d at 1285.

*Ravenel v. Burnett*, 5 So. 3d 592, 598 (Ala. Civ. App. 2008).  In *Edison*, the court further noted that "at the trial of the ... action [the plaintiff] would have a strict burden of proving a negative–i.e., the complete absence of a scintilla of probable cause for [the defendant] to bring the [original] action." *Id*., 527 So. 2d at 1285.

The defendants argue they "had probable cause to institute litigation against Issac David based upon a contract which he signed in his individual capacity," and, therefore are entitled to summary judgment on the claim of malicious prosecution.  (Doc. 12 at 5).  As noted above, the plaintiff disputes this contention, stating that § 7-3-402(b) of the ALABAMA CODE controls.  It provides:

> (b)  If a representative signs the name of the representative to an instrument and the signature is an authorized signature of the represented person, the following rules apply:
>
> (1)  If the form of the signature shows unambiguously that the signature is made on behalf of the represented person who is identified in the instrument, the representative is not liable on the instrument.
>
> (2)  Subject to subsection (c), if (i) the form of the signature does not show unambiguously that the signature is made in a representative capacity or (ii) the represented person is not identified in the instrument, the representative is liable on the instrument to a holder in due course that took the instrument without notice that the representative was not intended to be liable on the instrument.  With respect to any other person, the representative is liable on the instrument unless the representative proves that the original parties did not intend the representative to be liable on the instrument.

ALA. CODE § 7-3-402(b).  The plaintiff cites to the commentary to § 402 as providing important

background, context and direction in the present matter.  It states, in pertinent part:

> Subsection (b) concerns the question of when an agent who signs an instrument on behalf of a principal is bound on the instrument. The approach followed by former Section 3-403 was to specify the form of signature that imposed or avoided liability. This approach was unsatisfactory. There are many ways in which there can be ambiguity about a signature. It is better to state a general rule.  Subsection (b)(1) states that if the form of the signature unambiguously shows that it is made on behalf of an identified represented person (for example, "P, by A, Treasurer") the agent is not liable.  This is a workable standard for a court to apply.  Subsection (b)(2) partly changes former Section 3-403(2).  Subsection (b)(2) relates to cases in which the agent signs on behalf of a principal but the form of the signature does not fall within subsection (b)(1). The following cases are illustrative. In each case John Doe is the authorized agent of Richard Roe and John Doe signs a note on behalf of Richard Roe. In each case the intention of the original parties to the instrument is that Roe is to be liable on the instrument but Doe is not to be liable.

> Case #1. Doe signs "John Doe" without indicating in the note that Doe is signing as agent. The note does not identify Richard Roe as the represented person.

> Case #2. Doe signs "John Doe, Agent" but the note does not identify Richard Roe as the represented person.

> Case #3. The name "Richard Roe" is written on the note and immediately below that name Doe signs "John Doe" without indicating that Doe signed as agent.

> In each case Doe is liable on the instrument to a holder in due course without notice that Doe was not intended to be liable.  In none of the cases does Doe's signature unambiguously show that Doe was signing as agent for an identified principal.  A holder in due course should be able to resolve any ambiguity against Doe.

> But the situation is different if a holder in due course is not involved.  In each case Roe is liable on the note.  Subsection (a).  If the original parties to the note did not intend that Doe also be liable, imposing liability on Doe is a windfall to the person enforcing the note.  Under subsection (b)(2) Doe is prima facie liable because his signature appears on the note and the form of the signature does not unambiguously refute personal liability.  But Doe can escape liability by proving that the original parties did not intend that he be liable on the note.  This is a change from former Section 3-403(2)(a).

A number of cases under former Article 3 involved situations in which an agent signed the agent's name to a note, without qualification and without naming the person represented, intending to bind the principal but not the agent. The agent attempted to prove that the other party had the same intention. Some of these cases involved mistake, and in some there was evidence that the agent may have been deceived into signing in that manner. In some of the cases the court refused to allow proof of the intention of the parties and imposed liability on the agent based on former Section 3-403(2)(a) even though both parties to the instrument may have intended that the agent not be liable. Subsection (b)(2) changes the result of those cases, and is consistent with Section 3-117 which allows oral or written agreements to modify or nullify apparent obligations on the instrument.

Former Section 3-403 spoke of the represented person being "named" in the instrument. Section 3-402 speaks of the represented person being "identified" in the instrument. This change in terminology is intended to reject decisions under former Section 3-403(2) requiring that the instrument state the legal name of the represented person.

ALA. CODE § 7-3-402 Official Comment 2.

The plaintiff asserts that the exhibits before this court show "that the original parties to the contracts in this case did not intend for Issac David to be personally liable." (Doc. 14 at 5). In support of this contention, he states that "'The David Group, Inc.,' is listed on 23 occasions as the Seller or in that capacity on the letterhead;" the limited warranty, which was signed at the closing lists "The David Group, Inc.;" "The Official Settlement ... at the closing has the Seller listed as The David Group, Inc.;" the defendants' counsel wrote pre-suit letters "stating the alleged defects and demanding remedies to 'Issac, David, The David Group, Inc.;'" checks issued to Issac David individually were deposited into the business account; the business is the grantor in the survivorship deed; and other miscellaneous documents listed "The David Group, Inc." as the contracting party. (Id. at 6). He concludes that it was "clear throughout the relationship that the entity identified as the represented part[y] and as the only party liable was The David Group,

Inc., and not Issac David....  In short, there was no reasonable basis for a party represented by competent counsel to believe that Issac David was liable."  (*Id*.)

The defendants retort that the plaintiff's response is deficient in that his reliance on § 7-3-403 is misplaced because the "Homebuyer agreement" between the parties, including the addenda thereto, does not constitute a negotiable instrument as defined in ALA. CODE § 7-3-104, which would make § 403 applicable.  (Doc. 15 at 2, n.2).  The court agrees with the first contention.  The contract is not a negotiable instrument.  *See* ALA. CODE § 7-3-102(a) ("This article [Article 3] applies to negotiable instruments."); § 7-3-104(a) (defining a "negotiable instrument" as an unconditional promise to pay a fixed amount, payable to bearer or to order, on demand or at a definite time, and not stating any other undertaking or instruction by the person promising to pay).  Section 403, therefore is inapposite in this situation.

The defendants also assert that the plaintiff's response further provides evidence showing that they possessed the requite probable cause to initiate the prior litigation and, thereby, justifying granting of summary judgment on the malicious prosecution claim.  (Doc. 15 at 3). That evidence is the fact that they paid the plaintiff personally by check for some work.  The plaintiff retorts that the money was deposited into the business account for "The David Group, Inc."  (Doc. 14 at 5 (citing Ex. 8)).  This evidence, while not dispositive, does support the defendants' contention that they possessed the requisite probable cause.

Lastly, the defendants assert that because there are undisputed facts establishing that they had probable cause to bring the state court action, "[the plaintiff] cannot recover for malicious prosecution and summary judgment is appropriate."  (Doc. 15 at 4).  The court agrees.  It is undisputed that the plaintiff signed the "Homebuyer Agreement" without any restriction or

indication of capacity or agency; he signed the "Limited Home Warranty" and the "Plan Review/Change Order as the homebuilder;[22] and, Mrs. Shah wrote "some checks" to the plaintiff individually.  Under these circumstances, the court finds as a matter of law that the facts are sufficient evidence of probable cause to justify the commencement of the action against David (the plaintiff herein) in his individual capacity.  Although the circumstances leading to that probable cause may be deemed to be carelessness, a scrivener's errors or simply poor drafting, they still are sufficient probable cause to warrant the granting of the motion for summary judgment in this case.  The presence of other, contrary evidence does not negate the presence of probable cause.  The discussion, referenced above, in *Eidson*, is not only instructive, but dispositive.  The Alabama Supreme Court stated:

> The test that this Court must apply when reviewing the lack-of-probable-cause element in a malicious prosecution case in which summary judgment has been granted to a defendant is as follows: Can one or more undisputed facts be found in the record below establishing that the defendant acted in good faith on the appearance of things as they existed when suit was filed, based upon direct evidence, or upon circumstantial evidence and inferences that can reasonably be drawn therefrom?  If so, then summary judgment in favor of the defendant on plaintiff's malicious prosecution count would be appropriate.

*Eidson*, 527 So. 2d at 1285-86.  Articulated differently, the Court also stated:

> If there are any undisputed facts of record establishing that [the defendant] had probable cause to bring the former action ... against [the plaintiff], then [the plaintiff] cannot recover for malicious prosecution and summary judgment is appropriate.

*Eidson*, 527 So. 2d at 1285.

Construing the evidence in a light most favorable to the plaintiff, the court is still left with

---

[22] The "New Home Warranty" had a line where the plaintiff could have signed as the "President," but he did not.  He signed on the builder line.  (Ex. B (doc. 13-1 at 12 of 76); Ex. 2 (doc. 14-1 at 17 of  46)).

the fact that the plaintiff signed the agreement in his individual capacity without any reference to his position with "The David Group, Inc."  Although there are references in the addenda and other documents that the plaintiff was the president of the business, that does not change the fact that he signed the document without any type of reservation or notation of agency.  At most, this created a triable issue of fact for a jury or arbiter.  *See Marriott Inter., Inc. v. deCelle*, 722 So. 2d 760 (Ala. 1998) (holding that inconsistency between the body of a guaranty contract and the signature block creates an ambiguity as to whether the signatory was a guarantee in his individual capacity requiring reversal of dismissal of the case); *see also Lutz v. Van Heynigen Brokerage Co.*, 199 Ala. 620, 628-29, 75 So. 284, 287-88 (Ala. 1917) (holding that inconsistency between signature in individual capacity and the references in the body of the contract that he had signed as a representative created an ambiguity allowing parol evidence to determine the intent of the parties).

Additionally, nothing in the record counters the allegations in the initial complaint that David, the plaintiff in this action, possessed information concerning the condition of the home and property which was not disclosed.  Although the arbitrator ultimately found against the Shahs on the claims related to these allegations, that does not alter the fact that there is no evidence before this court that there was a lack of probable cause to support the claims for misrepresentation, fraud and suppression against David in his individual capacity.  (Ex. I at Counts VI and VII).[23]  Accordingly, the motion is due to be granted on this basis alone.

IV.    **CONCLUSION**

Premised on the foregoing, the court finds that the defendants' motion for summary

---

[23] Doc. 13-1 at 68-69 of 76.

14

judgment (doc. 11) is due to be granted.  An appropriate order will be entered.

      **DONE**, this the 16th day of November, 2010.

**JOHN E. OTT**
United States Magistrate Judge